The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BAINS LLC d/b/a Flying B,<br><br>        Plaintiff,<br><br>  v.<br><br>ARCO PRODUCTS COMPANY, a division of Atlantic Richfield Co.,<br><br>        Defendant. | NO. C01-0235Z<br><br>PLAINTIFF'S BRIEF RE AMOUNT OF PUNITIVE DAMAGES |

## I. INTRODUCTION

This was a classic punitive damages case involving repeated acts of egregious race discrimination by ARCO Products Company against a small, minority owned and staffed business. More than three years ago, after sitting through the trial and hearing the evidence, the jury determined that $5 million was the appropriate amount to punish ARCO for its unlawful conduct. Fresh off the trial—and after an in-depth review of the record—this Court upheld the jury's punitive damages award in its entirety, noting that "the egregiousness of ARCO's conduct was obvious to everyone in the courtroom." *Bains LLC v. ARCO Prods. Co.*, 220 F. Supp. 2d 1193, 1201 (W.D. Wash. 2002)

PLAINTIFF'S BRIEF RE AMOUNT OF PUNITIVE
DAMAGES - 1

BUDGE & HEIPT, P.L.L.C.
705 SECOND AVENUE, SUITE 910
SEATTLE, WASHINGTON 98104
(206) 624-3060
(206) 621-7323 (fax)

(emphasis added). ARCO appealed.

On appeal, the United States Court of Appeals for the Ninth Circuit fully agreed with this Court's conclusions about the egregiousness of ARCO's conduct, finding it to be "highly reprehensible" and consisting of "repeated" acts of "intentional" and "malicious" race discrimination against a victim that was "highly vulnerable financially." *See Bains LLC v. ARCO Prods. Co.*, 405 F.3d 764, 775, 777 (9th Cir. 2005). The Ninth Circuit also took note of "ARCO's clear failure to remedy or even address" the discrimination. *Id.* at 775. However, for constitutional reasons, the Ninth Circuit held that the award had to be reduced to an amount between $300,000 and $450,000. The Ninth Circuit decided that this Court should determine the appropriate amount within that range because it "tried the case and has greater understanding of the facts." *Id.* at 777. As set forth more fully below, the facts of this case easily justify setting the punitive damages award to the maximum amount permitted by the Ninth Circuit.

## II.   SUMMARY OF FACTS

The facts of this case have not changed. They are fully detailed in briefing already before the Court and have been summarized by this Court and the Ninth Circuit in the two published opinions cited above.

As the Court may recall, Flying B is a small transportation company started by three East Indian brothers—Deep, Paul, and Gary Bains. The Bains brothers literally embody the American dream. They came to this country in the late 1980s with nothing—to escape religious persecution in India. They worked hard, saved their money, became American citizens, and started their own business. Their business was a success.

In June 2002 ARCO contracted with a number of companies to haul fuel to make up for the

PLAINTIFF'S BRIEF RE AMOUNT OF PUNITIVE
DAMAGES - 2

705 SECOND AVENUE, SUITE 910
SEATTLE, WASHINGTON 98104
(206) 624-3060
(206) 621-7323 (fax)

downed Olympic Pipeline. One of those companies was Flying B. Like the Bains brothers, most of Flying B's employees were East Indian. Flying B was the only minority owned and staffed carrier on the route.

From the moment Flying B began its work under the contract, ARCO made it clear that East Indians were not welcome. ACRO supervisory personnel subjected Flying B's owners and employees to severe discriminatory treatment on a daily basis, and—despite multiple reports to high level ARCO management—ARCO did nothing to stop it. The discrimination endured by Flying B's owners and employees included being called every racist name in the book by their supervisor, Bill Davis: "rag heads," "towel heads," "camel jockeys," "stupid Indians," "f-ing Indians," "mother f-ing Indians," and numerous other demeaning, racist names. He said these ugly slurs and bigoted remarks directly to the faces of Flying B's East Indian owners and employees as they tried to do their jobs. He also routinely told them to "go back to India."

The evidence of discrimination was not limited to Bill Davis's racial slurs. Flying B was subjected to differential treatment in the performance of a contract that paid it in direct proportion to how speedily and efficiently it could perform. The conduct included being made to use slower equipment, being made to wait in longer lines, being made to clean spills of non-Indian drivers, being made to stand in the rain while non-Indian drivers could seek shelter, being prohibited from entering certain areas of the facility where non-Indians were welcome, being berated and falsely accused of things they did not do, being held to different security standards, and being subjected to other forms of unequal treatment. All of this had an adverse effect on company morale and interfered with Flying B's ability to perform its work in an efficient and speedy manner. The discrimination was so bad that at one point, all of Flying B's drivers were contemplating collectively walking off the job.

PLAINTIFF'S BRIEF RE AMOUNT OF PUNITIVE
DAMAGES - 3

BUDGE & HEIPT, P.L.L.C.
705 SECOND AVENUE, SUITE 910
SEATTLE, WASHINGTON 98104
(206) 624-3060
(206) 621-7323 (fax)

Flying B's owners went to the highest level manager in Seattle, on *four* separate occasions, reported all of the above to him, and asked him for his help. Each time, they described in detail the racial slurs and the day-to-day differential treatment and asked him to do something about it. In response to each report, he conducted no investigation and took no affirmative steps to remedy the situation. He did nothing, and the discrimination continued. Rather than investigate Flying B's complaints—or do anything whatsoever to remedy the discrimination—this high level ARCO manager terminated Flying B's contract without notice, warning, or explanation. The day after their company's unlawful termination, the owners of Flying B contacted an ARCO executive in Los Angeles, reported all of the discrimination to him, and asked him to investigate the situation. Yet, he conducted no investigation and refused to reinstate Flying B's contract. Flying B was forced to lay off all of its drivers and sell its now superfluous fleet of trucks.

## IV. ARGUMENT

The purpose of punitive damages is to punish the defendant for its misconduct and to deter the defendant and others from engaging in the same type of misconduct again in the future. After sitting through the trial, hearing all the evidence, and judging the credibility of the witnesses, the jury determined that $5 million was an appropriate amount to effectuate the twin purposes of punitive damages. In reviewing the evidence it had just heard, this Court strongly believed the jury's $5 million punitive award was completely supported by the evidence: "A review of the record leaves the Court firmly convinced that the amount of the punitive damage award in this case was fully justified by the evidence . . . ." *Bains* LLC, 220 F. Supp. 2d at 1202. The facts and the record below have not changed, and the Ninth Circuit's own condemnation of ARCO's conduct only confirms its

PLAINTIFF'S BRIEF RE AMOUNT OF PUNITIVE
DAMAGES - 4

BUDGE & HEIPT, P.L.L.C.
705 SECOND AVENUE, SUITE 910
SEATTLE, WASHINGTON 98104
(206) 624-3060
(206) 621-7323 (fax)

reprehensibility. ARCO's conduct is just as blameworthy today as it was when this Court decided to uphold the jury's award.

It is unfortunate that the jury's award is being reduced at all. ARCO's conduct was deplorable, and it fully deserved the message sent by the jury and upheld by this Court. However, according to the Ninth Circuit, $450,000 is the most that ARCO can be penalized under the constitution. Given this Court's post-trial ruling, it would make no sense to remit the jury's award to anything less.

## V. CONCLUSION

For the foregoing reasons, this Court should remit the punitive award to $450,000. The Court should enter judgment for that amount, together with all amounts previously awarded for compensatory damages, nominal damages, attorneys' fees and costs, and interest from the dates of the original judgments.

DATED this 10th day of October, 2005.

Respectfully Submitted,

BUDGE & HEIPT, P.L.L.C.

Erik J. Heipt, WSBA # 28113
Edwin S. Budge, WSBA # 24182
Attorneys for Plaintiff

PLAINTIFF'S BRIEF RE AMOUNT OF PUNITIVE
DAMAGES - 5

BUDGE & HEIPT, P.L.L.C.
705 SECOND AVENUE, SUITE 910
SEATTLE, WASHINGTON 98104
(206) 624-3060
(206) 621-7323 (fax)